### ST. PIERRE v. ESTATE OF ST. PIERRE.
#### OPINION OF THE COURT.

1. DEEDS—HUSBAND AND WIFE—TENANCY BY ENTIRETIES—TENANCY IN COMMON.

    A conveyance to a man and a woman referred to as husband and wife who in fact are not married does not create a tenancy by the entirety, but a tenancy in common.

2. SAME—PARTY CLAIMING UNDER A DEED MUST CONFIRM IT IN ITS ENTIRETY.

    One who claims under a deed confirms all its provisions, and cannot establish his claim by adopting those provisions only

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 26 Am Jur, Husband and Wife § 87.
    Character of tenancy created by owner's conveyance to himself and another, or to another alone, of an undivided interest. 44 ALR2d 595.
    Character and incidents of estate created by a deed to persons as husband and wife who are not legally married. 83 ALR2d 1051.
[2, 3, 12] 28 Am Jur 2d, Estoppel and Waiver § 4 et seq.
[4, 5, 8, 13, 15, 16] 26 Am Jur, Husband and Wife § 75.
[6] 20 Am Jur 2d, Costs § 15.
[9] 26 Am Jur, Husband and Wife § 70.
[10] 28 Am Jur 2d, Estoppel and Waiver §§ 81, 88.
[11] 28 Am Jur 2d, Estoppel and Waiver §§ 83, 85.
[14] 28 Am Jur 2d, Estoppel and Waiver § 1.
[17] 44 Am Jur, Quieting Title and Determination of Adverse Claims §§ 77, 78.

which are in his favor while repudiating or contradicting others that are not favorable.

3. ESTOPPEL—TITLE—DEEDS.

Estoppel will be applied by court to protect rights of others than grantees, their heirs or estates, where such rights depend upon apparent title created by deed.

4. DEEDS—TITLE—RECITALS—THIRD PARTIES—ESTOPPEL.

Widow and heirs of decedent are estopped to challenge the fact that decedent and plaintiff were husband and wife, as recited in conveyances to decedent and plaintiff, as to any property involving the rights of third parties without actual or constructive notice of the fact that decedent and plaintiff were not husband and wife.

5. SAME—TITLE—RECITALS—THIRD PARTIES—ESTOPPEL.

Widow and heirs of decedent are not estopped in suit to quiet title to question recitals in deeds describing decedent and plaintiff as husband and wife where they were not married and no intervening rights of third parties for value are involved; hence, decedent's estate is entitled to a one-half interest in any property remaining in name of plaintiff as survivor of decedent.

6. COSTS—NEITHER PARTY PREVAILING IN FULL.

No costs are awarded in case where judgment of the trial court is affirmed in part and reversed in part, since neither party has prevailed in full.

SEPARATE OPINION.

T. E. BRENNAN, J.

7. DEEDS—HUSBAND AND WIFE—TENANCY BY ENTIRETIES—TENANCY IN COMMON.

*A deed to 2 persons, not husband and wife, cannot create a tenancy by the entireties, even though the grantees are described as husband and wife, but may create a tenancy in common.*

8. SAME—TITLE—HUSBAND AND WIFE—THIRD PARTIES.

*One who in reliance on the record title purchases land for valuable consideration from grantors who took title as husband and wife or from the survivor of them, without knowledge or notice that his grantors were in fact tenants in common, takes a title which is valid as against anyone whose claim is based upon the tenancy in common.*

DISSENTING OPINION.

O'HARA and ADAMS, JJ.

9. DEEDS—TENANCY BY THE ENTIRETIES—GRANTEES DESIGNATED HUSBAND AND WIFE—NO MARRIAGE.

> An estate by the entireties cannot be created by deeds designating the grantees as husband and wife where, at the time, a lawful marriage between the grantees did not exist.

10. ESTOPPEL—APPARENT PAPER TITLE—STATUTE OF FRAUDS.

> Rule that title may not be created by estoppel is to prevent the uncertainty of titles which would arise if the statute of frauds could be evaded and parol evidence of an estoppel could be introduced to show that the paper title is not what it appears to be and the rule is inapplicable to a case where estoppel serves to defend and not to destroy the paper title.

11. SAME—APPARENT PAPER TITLE.

> A party may not be estopped from claiming that the paper title is what it appears to be but he may be estopped from showing by parol evidence that the paper title is not what it appears to be.

12. DEEDS—PARTY CLAIMING UNDER DEED MUST CONFIRM IT IN ITS ENTIRETY.

> One who claims under a deed confirms all its provisions and cannot establish his claim by adopting those provisions which are in his favor while he repudiates or contradicts others that are unfavorable.

13. ESTOPPEL—RATIFICATION BY CONDUCT—PRIVIES.

> Decedent signified his ratification of the acceptance of title with plaintiff in relationship of husband and wife, although they were not married, by restating this relationship in deeds to subdivided lots where their names appeared as grantors, thereby effecting an equitable estoppel as to him and those in privity with him.

14. SAME—BASIS—APPLICATION.

> Estoppel is based on some misleading conduct or language of one person which, being relied on, operates to the prejudice of another and is applied to the wrongdoer by the court in denial of some right, which otherwise might exist, to prevent a fraud.

15. Deeds—Recitals—Estoppel—Estates of Decedents.

> *Personal representative and heirs of decedent, relying solely on rights of decedent, are estopped from claiming title to property against plaintiff, where decedent himself would have been estopped from claiming title on the facts presented because he and plaintiff were grantees in deeds reciting that decedent and plaintiff were husband and wife, although they were not married, and the issue of estoppel was raised at trial.*

16. Estoppel—Parties Estopped—Title—Privity.

> *Parties claiming title from no other source than as personal representative or heirs of a decedent who is estopped to deny an apparent tenancy by the entireties created and ratified by his acts are in privity with decedent and also estopped.*

17. Quieting Title—Third Party—Titles—Interpleader.

> *Adjudication of rights of third parties deriving interests in land through the parties to an action to quiet title without interpleading the third parties is error.*

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., Burns and McGregor JJ., affirming Livingston, Carland (Michael), J.   Submitted December 6, 1967.   (Calendar No. 39, Docket No. 51,582.)   Decided June 10, 1968.

2 Mich App 723, affirmed in part, reversed in part.

Bill of complaint by Angeline St. Pierre against Estate of Sam St. Pierre, Ilene Timmons, administratrix, and others to quiet title to certain lands conveyed to Sam St. Pierre and Angeline St. Pierre as grantees.   Judgment for defendants affirmed by Court of Appeals.   Plaintiff appeals.   Affirmed in part and reversed in part.

*E. Reed Fletcher,* for plaintiff.

*Martin J. Lavan* and *William D. McCririe,* for defendants.

T. M. Kavanagh, J.   This case is here on appeal from a decision of the Court of Appeals[1] affirming a judgment of the circuit court of Livingston county granting to the defendants a one-half interest as tenants in common in all the property owned by the plaintiff and Sam St. Pierre at the date of Sam's death.

Leave to appeal was granted by this Court on April 12, 1967, 379 Mich 759.

Angeline St. Pierre filed a complaint to quiet title to various parcels of land, the title to which had been obtained by deeds naming as grantees herself and Sam St. Pierre as husband and wife. Plaintiff and Sam St. Pierre lived together as husband and wife from April 15, 1938, until Sam's death on December 27, 1961. At all times during those years the plaintiff believed herself to be the lawful common-law wife of Sam St. Pierre. After Sam's death it was discovered that he had never been divorced from defendant Irene St. Pierre.

At the time of Sam's death plaintiff and Sam had conveyed several lots by warranty deed and agreed to convey others by land contracts. Still other lots remained in their names.

The defendants in this case are the estate of Sam St. Pierre, the undivorced wife Irene St. Pierre, and the children of the marriage of Sam and Irene.

Plaintiff contends defendants are estopped to offer proof as to the true relationship of Sam St. Pierre and herself. She relies on a line of cases in Michigan which hold that if the rights of third parties are involved, the persons claiming under the deeds will be estopped to deny that the words "as husband and wife" mean anything other than what they import.

1 2 Mich App 723.

Defendants contend this case falls under another line of cases in Michigan where it has been consistently held that when grantees are described in a deed as husband and wife, when they are not in fact married, they take title as tenants in common.

The judgment of the circuit court, which was affirmed by the Court of Appeals, reads in pertinent part as follows:

"It is ordered and adjudged that the plaintiff, Angeline St. Pierre, is the owner of an undivided one-half of all of the property owned by Angeline St. Pierre and Sam St. Pierre on the date of the death of the said Sam St. Pierre, December 27, 1961.

"It is further ordered and adjudged that the defendant, Ilene Timmons, in her representative capacity as administratrix of the estate of Sam St. Pierre, deceased, is the owner of an undivided one-half of the property owned by the plaintiff, Angeline St. Pierre, and Sam St. Pierre on the date of the death of the said Sam St. Pierre, December 27, 1961.

"It is further ordered and adjudged that the ownership of said property as set forth above shall be as tenants in common, each as to an undivided one-half thereof.

"It is further ordered and adjudged that title to all property conveyed by the said Sam St. Pierre and Angeline St. Pierre, as wife of the said Sam St. Pierre, prior to the death of the said Sam St. Pierre, shall be quieted in all grantees in said conveyances. * * *

"It is further ordered and adjudged that the defendant, Ilene Timmons, as administratrix of the estate of Sam St. Pierre, deceased, is entitled to one-half of the proceeds of any and all land contracts accrued or paid since December 27, 1961, the date of the death of the said Sam St. Pierre.

"It is further ordered and adjudged that the plaintiff, Angeline St. Pierre, is entitled to one-half

of the proceeds of any and all land contracts received or accrued since December 27, 1961, the date of the death of the said Sam St. Pierre.

"It is further ordered and adjudged that the plaintiff, Angeline St. Pierre, account to the defendant, Ilene Timmons, as administratrix of the estate of Sam St. Pierre, deceased, for any and all payments so received and that the defendant, Ilene Timmons, as administratrix of the estate of Sam St. Pierre, deceased, account to the plaintiff, Angeline St. Pierre, for any and all payments so received.

"It is further ordered and adjudged that the defendants, or any of them, shall join in any and all conveyances required so as to convey title pursuant to land contracts made by the said Sam St. Pierre and Angeline St. Pierre, as husband and wife, prior to the death of the said Sam St. Pierre on December 27, 1961."

One line of cases holds that when land is conveyed to two persons and the conveyance mentions that they are taking as husband and wife, when in fact they are not married, they hold the property involved as tenants in common. In the following cases the plaintiffs and the defendants representing the interests of one of the grantees to the conveyance were entitled to an undivided one-half interest therein as tenants in common. *Collins* v. *Norris* (1946), 314 Mich 145; *Cristia* v. *Cristia* (1947), 317 Mich 66; *Spence* v. *Jones* (1960), 359 Mich 231; *Daniels* v. *Daniel* (1961), 362 Mich 176.

The other line of cases holds that the parties challenging the relationship of the grantees taking as husband and wife are estopped to offer proofs showing that the grantees are not husband and wife, for the reason that if they are attempting to take by the instrument they are estopped to prove the invalidity of any of the provisions therein. As they are estopped to deny that the grantees were married at the time of the taking of the property,

they cannot disprove the taking as tenants by the entireties. *Jacobs* v. *Miller* (1883), 50 Mich 119; *Hawley* v. *Dibble* (1915), 184 Mich 298; *Young* v. *Young* (1918), 200 Mich 236; *Stone* v. *Culver* (1938), 286 Mich 263; *Porter* v. *Landis* (1950), 329 Mich 76; *Franklin* v. *Franklin* (1958), 354 Mich 543.

In the cases above cited standing for the proposition that the estate created is a tenancy in common, note the relationship of the parties in the litigation. In the *Collins Case,* plaintiff was the husband and defendant was the wife. There the Court said there was no estoppel. The *Cristia Case* was a divorce case between a husband and wife, and the Court held that their vendees' interest in a land contract was held by them as tenants in common. In the *Spence Case,* the plaintiff was the administrator of the husband's estate and defendant was the wife. In the *Daniels Case,* plaintiffs were the administratrix of the decedent's estate, his first wife, and the first wife's child, and the alleged second wife was the defendant.

The rule is correctly stated in the *Daniels Case* by Justice Souris, in a concurring opinion, where he states (p 189):

"I concur in affirmance on the ground that in the absence of a valid marriage between defendant and Joseph Daniel or Daniels, *as between themselves, their heirs and their estates,* no tenancy by the entireties was created."

Justice Souris further stated (p 191):

"Where rights of others than the grantees, their heirs or estates depend upon the apparent title created, this Court will apply a theory of estoppel to protect such rights."

We find in the cases which support the estoppel rule, that each case involves the rights of third

parties. In the *Hawley Case,* the plaintiff had purchased the land from the alleged wife. In the *Young Case,* the plaintiff attempted to take the land involved under the will and then have the balance of the will declared invalid. This the Court refused to do, saying (p 241):

"He cannot elect to treat the first will as the last will and testament of David J. Young for the purpose of basing his title thereon to a portion of the lands conveyed thereunder, and at the same time elect to consider it invalid for other purposes."

In the *Stone Case,* the decedent deeded the property to her purported husband, Edgar Haney. Thereafter she died and Edgar Haney conveyed the property by warranty deed to another as security for a loan, taking back a land contract. Haney later assigned his interest in the land contract to the plaintiff in the case. The decedent's estate was estopped from showing she was not married to Haney. In each of the above cases the rights of third parties were involved.

We hold in the case at bar that as to any property involving the rights of third parties, without actual or constructive notice of the fact that Sam and Angeline St. Pierre were not husband and wife, whether created by contract or deed, before or after the death of Sam, the defendants are estopped to challenge the fact that Sam and Angeline were husband and wife and, therefore, that defendants have no interest in these properties.

We further hold that the defendants are entitled to a one-half interest in any property remaining in the name of Angeline St. Pierre as survivor of herself and Sam St. Pierre, for the reason that as to such property no rights of third parties have become involved. Each one-half interest is held by

Angeline and the Estate of Sam St. Pierre as tenants in common.

The Court of Appeals and the trial court are reversed insofar as they are in conflict with this opinion. The cause is remanded to the trial court for the entry of a judgment in accordance with this opinion.

Since the judgment of the trial court is reversed in part and affirmed in part, neither party shall have costs.

DETHMERS, C. J., and KELLY, BLACK, and SOURIS, JJ., concurred with T. M. KAVANAGH, J.

T. E. BRENNAN, J. (*concurring*). I concur in the result reached by Mr. Justice T. M. KAVANAGH.

I would hold:

(1) That a deed to two persons who are not husband and wife cannot and does not create a tenancy by the entireties, even though the grantees are described as husband and wife. It could create a tenancy in common.

(2) One who purchases land in reliance on the record title thereof, for a valuable consideration, who took title from grantors as husband and wife or from the survivor of them, without knowledge or notice that his grantors were in fact tenants in common, takes a title which is valid as against anyone whose claim is based upon the tenancy in common.

This, as I understand it, is nothing more or less than the application of the traditional doctrine of *bona fide* purchaser in real estate transactions.

In *Jacobs* v. *Miller* (1883), 50 Mich 119, defendants argued that the wife in the conveyance was a *bona fide* purchaser. The Court merely recited that a deed was made to her without mentioning whether

she paid value or had notice. On page 126, the Court said, "On this question no opinion is intimated [referring to the rights of a *bona fide* purchaser]". The *Jacobs Case* should be overruled.

*Hawley* v. *Dibble* (1915), 184 Mich 298, did not involve a *bona fide* purchaser. Hawley was the lawyer for Sarah Fitzgibbons. He had represented her in *In re Fitzgibbons' Estate* (1910), 162 Mich 416. He made no claim that he purchased without notice or knowledge of the claims of defendants' predecessors in title. This case should be limited to its facts. A jury found in *Fitzgibbons' Estate* that the mate of the bigamous marriage was ignorant of the first marriage, and was in fact the legal widow of *Fitzgibbons* by reason of the prior death of the first wife. As his widow, the second wife was entitled to an inheritance out of Fitzgibbons' undivided one-half interest in any event, not to mention her dower in it, her homestead rights, widow's allowance, and a possible action against the estate for fraud. It was a case of a bigamous marriage validated by the later removal of the impediment, and at best stands for the proposition that in such cases there may be a *nunc pro tunc* creation of a tenancy by the entireties.

*Young* v. *Young* (1918), 200 Mich 236, did not involve a conveyance of land to persons not husband and wife describing them as such. It was a will contest, and has nothing to do with the cases presently under consideration.

*Stone* v. *Culver* (1938), 286 Mich 263, was an attempt to create a tenancy by the entireties without the use of a "straw man" prior to the adoption of PA 1955, No 3. The Court stated the common-law rule that lacking the unities of time and title, an estate by the entireties was not created. Plaintiff was a *bona fide* purchaser for value. The Court held that plaintiff was not to be put on notice from

the record title that Louise Greeley, the grantor, was one and the same person as Louise Haney, one of the grantees. *Stone* v. *Culver* correctly states and applies the law of *bona fide* purchaser, and it is interesting to note that no reference whatever is made therein to either *Hawley* or *Jacobs*.

In *Porter* v. *Landis* (1950), 329 Mich 76, plaintiff, Henry Porter, acquired title from his brother Ernest, the apparent survivor of himself and Bessie Porter, by a deed deposited in escrow and delivered upon Ernest's death. There was no claim by plaintiff that anything of value was paid for the property. He was not a *bona fide* purchaser. *Porter* should be overruled.

*Franklin* v. *Franklin* (1958), 354 Mich 543, involved a bill by a claimed widow and surviving grantee, and a cross-bill by one claiming to be the sole heir of the deceased grantee. There was no *bona fide* purchaser involved. *Franklin* should be overruled.

ADAMS, J. (*dissenting*).

## I. *The Facts.*

Sam St. Pierre was part owner of an appliance store in Detroit. Sometime during 1935, plaintiff went to work for him. She was then 17 years old. St. Pierre was about 35 years old. Plaintiff and Sam began going together. About three years later, Sam proposed marriage. Angeline accepted. She made the down payment on a cottage at Briggs lake and furnished it.

Sam and Angeline had heard there was no waiting period for marriage in Ohio. On April 15, 1938, they went to Napoleon, Ohio, and obtained a license to marry. On the application Sam St. Pierre made a sworn statement that he was not previously married, that he had no wife living, and that there

was no legal impediment to the marriage. The parties then discovered they could not be married that day because of Ohio law, but that they would have to come back later. Angeline returned with Sam to Briggs lake and began living with him as his wife.

In reliance upon Sam's representation that he was single, plaintiff entered into what she believed was a common-law marriage. Plaintiff knew that common-law marriages were valid in Michigan. Sam was working seven days a week and maintained he could not get away for another trip to Ohio. It became a matter of less and less importance to her that no ceremonial marriage had been performed.

World War II caused such a shortage of the appliances Sam was selling that he went bankrupt. They moved in with Angeline's mother. Eventually Sam St. Pierre had an opportunity to go into the construction business. He thought this was something he would like to do. Angeline borrowed money from her father. The home at Briggs lake was mortgaged to permit Sam to undertake the new venture. Angeline did the bookkeeping, collecting, advertising, picking up of materials, drove truck, and carried on the business except for actual operation of the crane and bulldozer. Throughout her entire supposed married life she actively engaged in all of the business enterprises. She inherited $10,000 which she invested in the business and the development of lands. The business was successful and several parcels of land were subdivided with lots sold by deed and land contracts in which Sam and Angeline held themselves out as husband and wife.

In 1959, Angeline was advised by Sam that he had been previously married and there was "a problem in his background that might involve fur-

ther troubles." Angeline had never been permitted
by Sam to meet any of his relations—father, broth-
ers and sisters. Throughout this purported mar-
riage, Sam had cut Angeline off entirely. He told
her that he was more or less the black sheep of
the family, that he had done something bad that
his family did not approve of, and that they did
not approve of him. Sam had even requested An-
geline not to contact his family in the event of his
death. At the time of his death on December 27,
1961, she knew only the name and address of one
brother. At the time she learned there was a "prob-
lem", Angeline and Sam had two grown and married
children. She still believed herself to be the wife
of Sam. Angeline's concluding testimony was:

"I believed I was married to Sam; he was my hus-
band and a previous marriage or a half dozen pre-
vious marriages would have made no difference.
He was my husband; I was his wife; we had a
home; we had children."

## II. *The Proceedings.*

Angeline filed a bill of complaint to quiet title in
which she alleged she was the owner in fee simple
of lands by deeds in which the grantees were named
as Sam and Angeline, his wife, or Sam and Ange-
line, husband and wife. Ilene Timmons, adminis-
tratrix of the estate of Sam, and Sam's wife, Irene,
and the seven children of Irene and Sam were made
defendants. Angeline pled ownership in the lands
by virtue of the death of Sam; that a portion of the
lands had been sold under land contracts; that the
defendants were claiming some right in the con-
tracts; that those claims constituted a cloud on her
title.

Defendants denied plaintiff's conclusions as to
the ownership of the properties and asserted that

plaintiff was a single woman. Ilene Timmons, as
administratrix, filed a separate cross-bill of com-
plaint asking for partition. Angeline's answer to
the cross-bill pled that Ilene was estopped to deny
that she and Sam were not [sic] husband and wife,
and estopped to attack the deeds under which she
claimed title, such estoppel being both *in pais* and
by deed.

On August 20, 1962, plaintiff filed a motion for
decree on the pleadings. Defendants filed separate
amended answers alleging as to Irene and the chil-
dren, that their claims were by right of inheritance,
and, as to Ilene, as administratrix, that she claimed
the same interest in the real property as Sam had
owned.

On November 6, 1962, the circuit judge filed a
written opinion in which he concluded that Angeline
and the estate of Sam were each the owners of an
undivided one-half interest in the properties. No
relief was granted on the cross-bill for partition,
pending proofs to determine whether partition could
equitably be ordered or whether a sale would be
necessary. Order denying plaintiff's motion for
judgment on the pleadings was filed on March 14,
1963.

Plaintiff filed a proposed amended complaint
setting forth in more detail a recital of the relation-
ship between herself and Sam. Order permitting
the filing of the amended complaint was entered,
and answers thereto were filed. The answers are
almost entirely a claim of lack of information or
knowledge sufficient upon which to form a belief
with defendants neither admitting nor denying and
leaving plaintiff to her proofs.

The case was tried in July, 1964. Angeline **St.**
Pierre and a Ward Van Blaricum were the only
witnesses. He testified that Angeline St. Pierre
handled the business end of a development under-

taken by Sam and Angeline. On April 12, 1965, the opinion of the circuit judge was filed. He found that the real estate ostensibly owned by Sam and Angeline as tenants by the entireties was, in fact, owned by them as tenants in common, each having an undivided one-half interest. The judgment of the court decreed that Angeline and Ilene, in her representative capacity, were each the owner of an undivided one-half interest in the property as tenants in common. It was further decreed that the title to all property conveyed by Sam and Angeline prior to Sam's death should be quieted in the grantees of such conveyances, free and clear of any claims on behalf of the estate of Sam, Ilene, Irene, or the children, and that the estate of Sam, Ilene, Irene, and the children should have no right, title or interest in or to any of the streets in platted subdivisions. Angeline and Ilene were held entitled each to one half of the proceeds of any land contracts accrued or paid since the date of Sam's death.

Claim of appeal was filed May 21, 1965. Opinion of the Court of Appeals was filed April 12, 1966, with a dissent filed April 18, 1966. Rehearing was denied by the Court of Appeals on August 5, 1966. (2 Mich App 723.) This Court denied application for leave to appeal by order entered on October 21, 1966. 378 Mich 736. On motion by the plaintiff to reconsider, this Court granted leave to appeal by order entered April 12, 1967. 379 Mich 759.

### III. *The Law.*

Under the deeds conveying the properties to Sam and Angeline, as husband and wife, or to Sam and Angeline, his wife, an apparent paper title in fee simple was established with an estate by the entireties created in them as grantees. Defendants insist

that the paper title is not binding as to them and undertake to show that throughout the period covered by the deeds of conveyance, Sam had never been divorced from Irene, and, hence, Angeline remained a single woman because it was impossible for her to enter into a lawful marriage with Sam.

This Court has repeatedly recognized that an estate by the entireties cannot be created by deeds designating the grantees as husband and wife where, at the time, a lawful marriage between the grantees did not exist. Absent estoppel, a challenge to the apparent paper title has been permitted, there being no reason as between the grantees not to show the true state of affairs. The following cases announce the rule:

*Collins* v. *Norris* (1946), 314 Mich 145, a suit to have defendant's name stricken where the grantees named in the deeds as husband and wife were each at the time married to another;

*Cristia* v. *Cristia* (1947), 317 Mich 66, an action for divorce, where the Court in dividing property found the interest of vendees named as husband and wife in a land contract to be as tenants in common, although they subsequently married;

*Williams* v. *Dean* (1959), 356 Mich 426, in which the Court rejected appellants' contention that since they were married after the execution of the land contract they thereby became tenants by the entireties before the levy of the writs of execution on the interest of the husband; ...

*Spence* v. *Jones* (1960), 359 Mich 231, holding in a partition action that the grantees in deed to property, described as husband and wife, took as tenants in common because the male grantee had a wife living at the time from whom he had not been divorced;

*Daniels* v. *Daniel* (1961), 362 Mich 176, where the plaintiff as administratrix prevailed in establish-

ing an interest for her decedent's estate as a tenant in common in property conveyed to decedent and defendant as husband and wife when at the time decedent was legally married to another.

In this case, Ilene, the administratrix, in her separate answer to plaintiff's amended bill of complaint stated: "This defendant alleges that she is entitled to the same interest in said real estate in her representative capacity as the deceased would have had." There is no claim by Ilene, as administratrix, that the lands involved must be sold to pay Sam's debts. Irene, the lawful wife, and the seven children in their separate answer to the amended bill of complaint alleged: "These defendants further admit that they have been determined to be the heirs of Sam St. Pierre and further state that it is possible that they may inherit from the estate of Sam St. Pierre as his heirs, but make no further claims other than by right of inheritance."

Thus, defendants, alleging they stand in the shoes of Sam and are entitled to take whatever interest he had in the lands and land contracts at the time of his death, seek to invoke the foregoing rule. They insist that as between Angeline and Sam there never was an estate by the entireties but, instead, the lands and land contracts were held as tenants in common, with each one having an undivided one-half interest therein at the time of Sam's death.

Plaintiff has met the defendants' claims by pleading estoppel, estoppel by deed and estoppel *in pais* or equitable estoppel. In *Stone* v. *Culver* (1938), 286 Mich 263, Justice Butzel wrote for a unanimous Court (pp 267, 268): "It is true that title may not be created by estoppel.  *  *  *  The purpose of the rule that title may not be created by estoppel is to prevent the uncertainty of titles which would arise if the statute of frauds could be evaded and parol evidence of an estoppel could be introduced

to show that the paper title is not what it appears
to be. The rule is not applicable to the instant
case in which the estoppel serves to defend and not
to destroy the apparent paper title. A party may
not be estopped from claiming that the paper title
is what it appears to be, but he may be estopped,
as in the instant case, from showing by parol evi-
dence that the paper title is not what it appears
to be." In *Daniels* v. *Daniel* (1961), 362 Mich 176,
it was stated (p 184): "While an estoppel may
not create title it may operate to prevent vitiation
of a title apparently created."

Sam had full knowledge of his own marital status
during all the years he lived with Angeline. Despite
this, he took title to the lands involved by deeds
naming himself and Angeline, husband and wife, as
grantees. He ratified this relationship and the
apparent paper title thus created by subsequently
conveying portions of the same land as subdivided
lots by deeds which named Sam and Angeline, hus-
band and wife, as grantors. "When a person has
so acted as to make it appear from the face of a
deed that a certain title has been created, he may
be estopped to introduce parol evidence to show
that that is not the actual title. *Stevens* v. *DeBar*
(1924), 229 Mich 251; *Colonial Theatrical Enter-
prises* v. *Sage* (1931), 255 Mich 160; *Spitzeley*
v. *Holmes* (1932), 256 Mich 559." *Stone* v. *Culver,*
*supra,* at page 267.

Every parcel of land as to which Angeline seeks
to quiet her title, and every parcel sold off under
land contract, was obtained initially under deeds
of conveyance to Sam and Angeline in which they
were named as husband and wife, or in which An-
geline was designated as the wife of Sam. Defend-
ants now assert their demands by virtue of these
same deeds. They would confirm the legal descrip-
tions and the conveyancing to Sam and Angeline,

but seek to reject that portion of each deed which describes Angeline as the wife of Sam, or describes the two of them as husband and wife.

It has long been settled that a person cannot accept and reject the same instrument. It is, likewise, settled that if a person undertakes to avail himself as to a part of the instrument, he cannot defeat its provisions in any other part as the doctrine of election prevents the assertion of repugnant rights. This equity rule has been said to be an extension of the law of equitable estoppel. *Aiken* v. *Gonser* (1955), 342 Mich 29, 35; *Porter* v. *Landis* (1950), 329 Mich 76. In *Holzbaugh* v. *Detroit Bank & Trust Company* (1963), 371 Mich 432, this Court denied relief to daughters of the testator who for a period of 18 years had accepted specific bequests under their father's will and the net income from a testamentary trust but who then filed a bill of complaint to have declared void certain charitable provisions in the trust under the will and for an order of distribution of funds and an accounting. Relief was denied on the basis of estoppel to assert repugnant rights under the same instrument. The cases of *Aiken* v. *Gonser, supra; Jacobs* v. *Miller* (1883), 50 Mich 119; *Hawley* v. *Dibble* (1915), 184 Mich 298; *Young* v. *Young* (1918), 200 Mich 236; and *Stone* v. *Cook* (1904), 179 Mo 534 (78 SW 801), were cited as time-honored precedents.

In the case of *Hayes* v. *Livingston* (1876), 34 Mich 384, an action of ejectment, Chief Justice COOLEY wrote on the application of estoppel *in pais.* He cautioned that the doctrine of estoppel *in pais* is not as broadly applicable to cases involving the legal title to real estate as it is in those cases where only personalty is in question, the proviso of the statute of frauds that interests in land shall not be created or transferred otherwise than by deed operating as a limitation upon the doctrine. In

this case, the rights of third persons are not involved and the provisions of the statute of frauds are inapplicable to the claim of Angeline who is not seeking to create or transfer any interests in lands other than the apparent paper title vested in her upon the death of Sam.

Ilene, as the personal representative of Sam, has presented no different position or more compelling case than that of Sam. Estoppel as to Sam becomes estoppel as to Ilene. Similarly, Irene and the children are in privity with Sam. They do not rely on a title to the lands acquired from sources other than Sam. They say they stand to inherit from Sam. Their rights are to be determined by the acts and conduct of Sam and as his heirs they are estopped if Sam, their ancestor, would be estopped. 28 Am Jur 2d, Estoppel and Waiver, §§ 119, 120, pp 778–780.

In the case of *Stevens* v. *DeBar, supra,* the Court said (p 253):

"In the instant case the vendee, Mrs. DeBar, directed the vendor, Mrs. Hardy, to convey the legal title to herself and her former husband jointly with the right of survivorship; Mrs. Hardy complied with such direction, and as a part of the one transaction Mrs. DeBar *in writing* ratified it by executing with her former husband a mortgage for the balance of the purchase price. May the plaintiff whose sole rights are as heir at law of Mrs. DeBar and whose rights can be no greater than Mrs. DeBar's assail in a court of equity this transaction, this executed contract? We think not. This Court has consistently held that title to real estate may not be created by estoppel, but in numerous cases this Court has also held that a party may estop himself after the arrangements have been fully executed from asserting that the title he by his own acts has created or aided in creating is not the true title."

Sam signified his ratification of the acceptance of title with Angeline in the relationship of husband and wife by restating this relationship in the deeds to the subdivided lots where their names appeared as grantors.

The following cases set forth the general rules of equitable estoppel:

In *Dahrooge* v. *Rochester German Insurance Co.* (1913), 177 Mich 442, 452, it was said:

"Estoppel is based on some misleading conduct or language of one person which, being relied on, operates to the prejudice of another, and is applied to the wrongdoer by the court in denial of some right, which otherwise might exist, to prevent a fraud."

In *Kole* v. *Lampen* (1916), 191 Mich 156, involving assumpsit on a promissory note, this Court said, at page 157:

"It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

In *Chicago & Northwestern Railway Company* v. *Auditor General* (1884), 53 Mich 79, involving estoppel to dispute the legality of a tax assessment, this Court said at page 86:

"It sometimes becomes an act of simple justice in the law to hold a party to the truth of something he has asserted, and not to suffer him to aver or prove the contrary, because to do so would be to mislead and prejudice some other party who has acted in reliance upon the truth of his assertion.

The rule under which this is done is a simple rule of justice."

The above quotation was approved and applied in the subsequent case of *Kittinger* v. *Kittinger* (1947), 319 Mich 145, 151.

In *Colonial Theatrical Enterprises* v. *Sage* (1931), 255 Mich 160, 171, 172, this Court said:

"The basis of estoppel is fraud. The doctrine, being equitable, is dependent upon the circumstances, and the relief ranges from mere reimbursement to putting the party entitled to its benefit in the same position as if the thing represented was true."

It was said in *Gard* v. *Gard* (1918), 204 Mich 255, 259:

"This Court has repeatedly held in cases involving fraud that it does not lie with one charged with fraud, who assumes to have knowledge of a subject of which another may well be ignorant, to claim that such other should have used greater diligence to discover the fraud, should have been more vigilant, less credulous." (Citing cases.)

In *Detroit Savings Bank* v. *Loveland* (1911), 168 Mich 163, an action of assumpsit for labor and materials furnished, this Court said (p 172):

"Estoppel is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the act of the party himself, express or implied. If one's conduct induces another to believe in the existence of certain facts, and the other acts thereon to his prejudice, the former is estopped to deny that the state of facts does in truth exist."

In *Ollig* v. *Eagles* (1956), 347 Mich 49, the plaintiff had built a house on land which he mistakenly

believed to belong to his -wife, not knowing that
she had quit-claimed it to the defendant by a deed
never recorded. Defendant, knowing that he had
title, silently watched and even helped plaintiff build
the house. After the wife's death, when the hus-
band learned the facts, he sued, seeking title or
compensation. This Court held the defendant es-
topped by his silence and by his act in helping to
build the house from asserting his legal defenses.

As between Sam and Angeline, Sam by his con-
duct has estopped himself from claiming his rela-
tionship with Angeline was any other than he held
it out to be—husband and wife. The defendants
are all in privity with Sam and their claims are
subject to the same defenses as would bar a claim
by Sam. This is not a case of creating a new title
to the property in Angeline by estoppel. Instead,
it is a demand by her of confirmation of the title
already vested in her according to the record title.

To summarize: Sam induced Angeline to enter
into a purported marriage relationship with him,
to bear him two children, to live with him through
years of adversity that culminated in bankruptcy,
to assist him in a new business career with her
inheritance and her managerial and business abil-
ities. He isolated her from his family. Only 20
years later did he intimate to her difficulties in his
past. While he told her that he had been previously
married, according to the record before us, at no
time did he tell her that he was still married to
Irene. In numerous land contracts and other con-
veyances he held her out to be his wife. Even after
the admission in 1958 of trouble in his past, she
continued to believe she was his wife. These are
the equities on the side of Angeline. Defendants
have made no showing of any equities on Sam's
side, if any do exist. Since the equities of these
defendants are no greater than those of Sam, the

judgment of the chancellor should have been for Angeline.

The judge also erred in attempting to adjudicate in this case rights of third parties who had not been interpled. Such adjudication, as to title holders and land contract purchasers and as to governmental units to which streets had been dedicated, is unnecessary. Their titles are derived through Angeline and Sam, or through Angeline as the survivor. Since the record title will stand in Angeline upon entry of a new judgment, nothing further need be done to protect their rights.

The Court of Appeals should be reversed. The case should be remanded to the trial court for entry of a judgment in accordance with this opinion. Costs to plaintiff.

O'HARA, J., concurred with ADAMS, J.